1

2               **UNITED STATES DISTRICT COURT**

3                  **DISTRICT OF OREGON**

4                   **EUGENE DIVISION**

5

6  DANNY ROMERO,                    )
                                    )
7              Plaintiff,           )    No. 06:12-cv-01993-HU
                                    )
8  vs.                             )    **ORDER ON MOTION FOR**
                                    )       **SUMMARY JUDGMENT,**
9  DR. VARGO; STEVE SHELTON, M.D.; )      **MOTION TO COMPEL,**
   CARRIE COFFEE[1]; and DR. HANSEN; )  **AND MOTION FOR COUNSEL**
10                                  )
               Defendants.          )
11

12          _____

13

14  Danny Romero
    8690360
15  Oregon State Penitentiary
    2605 State Street
16  Salem, OR 97310-0505

17       Plaintiff *pro se*

18

19  Ellen F. Rosenblum
    Attorney General
20  Jessica B. Spooner
    Assistant Attorney General
21  Oregon Department of Justice
    1162 Court Street, NE
22  Salem, OR 97301-4096

23       Attorneys for Defendant

24  _____

25       [1]The record suggests the correct spelling of this defendant's
    name is "Coffey," rather than "Coffee." *See* Dkt. #75, Declaration
26  of Carrie A. Coffey.  However, the defendants have never moved to
    correct the spelling.  They continue to use the case caption with
27  the spelling shown above, while referring to this defendant as
    "Coffey" in their briefs and motion papers.  As "Coffey" appears to
28  be correct, the court will use that spelling in this opinion.

1 - ORDER ON PENDING MOTIONS

HUBEL, United States Magistrate Judge:

The plaintiff Danny Romero brings this action against three doctors and a civilian employee of the Oregon State Prison, alleging the defendants failed to provide him with timely treatment to repair a Morton's Neuroma in Romero's left foot.  He brings claims under 42 U.S.C. § 1983, alleging the defendants were deliberately indifferent to his serious medical needs, in violation of the Eighth Amendment to the United States Constitution; under 42 U.S.C. §§ 1985 and 1986, for violation of his due process rights; and under state law, for negligence.  Dkt. #2, Complaint; *see* Dkt. #74, p. 1.

The case currently is before the court on the defendants' Second Motion for Summary Judgment.**²**  Dkt. #73.  The defendants argue they are entitled to judgment as a matter of law on all of Romero's claims.  All parties have consented to entry of final judgment by a Magistrate Judge in accordance with Federal Rule of Civil Procedure 73 and 28 U.S.C. § 636(c).  The motion is fully briefed, and neither side has requested oral argument.  Accordingly, the court turns to consideration of the motion.

### I. *SUMMARY JUDGMENT STANDARDS*

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

---

**²**The defendants filed a previous summary judgment motion that rested solely on procedural grounds.  That motion was denied.  *See* Dkt. ##44-47 & 63.  The current motion for summary judgment addresses the merits of the case.

2 - ORDER ON PENDING MOTIONS

1  56(c)(2).  In considering a motion for summary judgment, the court

2  "must not weigh the evidence or determine the truth of the matter

3  but only determine whether there is a genuine issue for trial."

4  *Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 800 (9th Cir. 2002)

5  (citing *Abdul-Jabbar v. General Motors Corp.*, 85 F.3d 407, 410 (9th

6  Cir. 1996)).  The Ninth Circuit Court of Appeals has described "the

7  shifting burden of proof governing motions for summary judgment" as

8  follows:

9          The moving party initially bears the burden of
           proving the absence of a genuine issue of
10          material fact. *Celotex Corp. v. Catrett*, 477
           U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d
11          265 (1986).  Where the non-moving party bears
           the burden of proof at trial, the moving party
12          need only prove that there is an absence of
           evidence to support the non-moving party's
13          case. *Id.* at 325, 106 S. Ct. 2548.  Where the
           moving party meets that burden, the burden
14          then shifts to the non-moving party to
           designate specific facts demonstrating the
15          existence of genuine issues for trial. *Id.* at
           324, 106 S. Ct. 2548.  This burden is not a
16          light one.  The non-moving party must show
           more than the mere existence of a scintilla of
17          evidence. *Anderson v. Liberty Lobby, Inc.*,
           477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed.
18          2d 202 (1986).  The non-moving party must do
           more than show there is some "metaphysical
19          doubt" as to the material facts at issue.
           *Matsushita Elec. Indus. Co., Ltd. v. Zenith*
20          *Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct.
           1348, 89 L. Ed. 2d 528 (1986).  In fact, the
21          non-moving party must come forth with evidence
           from which a jury could reasonably render a
22          verdict in the non-moving party's favor.
           *Anderson*, 477 U.S. at 252, 106 S. Ct. 2505.
23          In determining whether a jury could reasonably
           render a verdict in the non-moving party's
24          favor, all justifiable inferences are to be
           drawn in its favor. *Id.* at 255, 106 S. Ct.
25          2505.

26  *In re Oracle Corp. Securities Litigation*, 627 F.3d 376, 387 (9th

27  Cir. 2010).

28

3 - ORDER ON PENDING MOTIONS

## II. SECTION 1983 STANDARDS GENERALLY

Title 42 U.S.C. Section 1983 provides, in relevant part, that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." 42 U.S.C. § 1983.

To prevail on a claim under 42 U.S.C. § 1983, the plaintiff must show that "a person acting under color of state law" deprived the plaintiff "of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S. Ct. 1908, 1913, 68 L. Ed. 2d 420 (1981), *overruled on other grounds, Daniels v. Williams*, 474 U.S. 327, 106 S. Ct. 662, 88 L. Ed. 2d 662 (1986). Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred. The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright v. Oliver*, 510 U.S. 266, 271, 114 S. Ct. 807, 811-812, 127 L. Ed. 2d 114 (1994) (internal citations and quotation marks omitted).

## III. STANDARDS FOR EIGHTH AMENDMENT CLAIM

In the present case, the constitutional right Romero claims was infringed is his right to be free from cruel and unusual punishment, guaranteed by the Eighth Amendment to the United States Constitution. *See, e.g.*, *Estelle v. Gamble*, 429 U.S. 97, 104-05,

1  97 S. Ct. 285, 291, 50 L. Ed. 2d 251 (1976) (intentional inter-
2  ference with prescribed treatment states a cause of action under
3  section 1983).

4      To prevail on his Eighth Amendment claim, Romero must show the
5  defendants were deliberately indifferent to a serious medical need.
6  *See Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). The test
7  for deliberate indifference was explained by the *Jett* court as
8  follows:

9              In the Ninth Circuit, the test for deliberate
               indifference consists of two parts. *McGuckin*
10             *v. Smith*, 974 F.2d 1050 (9th Cir. 1991),
               *overruled on other grounds by WMX Techs., Inc.*
11             *v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en
               banc). First, the plaintiff must show a
12             "serious medical need" by demonstrating that
               "failure to treat a prisoner's condition could
13             result in further significant injury or the
               'unnecessary and wanton infliction of pain.'"
14             *Id.* at 1059 (citing *Estelle [v. Gamble]*, 429
               U.S. [97,] 104, 97 S. Ct. 285[, 291, 50 L. Ed.
15             2d 251 (1976)]). Second, the plaintiff must
               show the defendant's response to the need was
16             deliberately indifferent. *Id.* at 1060. The
               second prong - defendant's response to the
17             need was deliberately indifferent - is satis-
               fied by showing (a) a purposeful act or
18             failure to respond to a prisoner's pain or
               possible medical need and (b) harm caused by
19             the indifference. *Id.* Indifference "may
               appear when prison officials deny, delay or
20             intentionally interfere with medical treat-
               ment, or it may be shown by the way in which
21             prison physicians provide medical care." *Id.*
               at 1059 (quoting *Hutchinson v. United States*,
22             838 F.2d 390, 392 (9th Cir. 1988)). Yet, an
               "inadvertent [or negligent] failure to provide
23             adequate medical care" alone does not state a
               claim under § 1983. *Id.* (citing *Estelle*, 429
24             U.S. at 105, 97 S. Ct. 285).

25 Jett, 439 F.3d at 1096.

26     Even if Romero can show the defendants were negligent, that
27 would be insufficient for liability. As the *Estelle* Court
28 explained:

1            [A] complaint that a physician has been negli-
2            gent in . . . treating a medical condition
           does not state a valid claim of medical mis-
3            treatment under the Eighth Amendment.  Medical
           malpractice does not become a constitutional
4            violation merely because the victim is a
           prisoner.  In order to state a cognizable
5            claim, a prisoner must allege acts or omis-
           sions sufficiently harmful to evidence delib-
6            erate indifference to serious medical needs.
           It is only such indifference that can offend
7            "evolving standards of decency" in violation
           of the Eighth Amendment.

8  *Estelle*, 429 U.S. at 106, 97 S. Ct. at 292.  Further, a mere

9  "difference of opinion does not establish deliberate indifference."

10  *Padgett v. Kowanda*, slip op., No. CV-08-87-HU, 2010 WL 4638871, at

11  *15 (D. Or. Aug. 12, 2010) (Hubel, M.J.) (citing *Jackson v.*

12  *McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996)).

13

14  ### IV. BACKGROUND FACTS

15      In January 2011, Romero saw a Dr. Becker, who diagnosed Romero

16  with a Morton's Neuroma in his left foot.  *See* Dkt. #87-1, ECF

17  p. 7.  Romero claims he has had pain from the neuroma for more than

18  ten years, but according to Romero, it was not diagnosed previously

19  by the prison's doctor, the defendant Dr. Hansen, despite Hansen's

20  indication that he was trained to diagnose foot disorders.  Dkt.

21  #86, ECF p. 3.

22      On May 18, 2011, Romero made a request for different shoes

23  that had worked well for him in the past.  The Therapeutic Level of

24  Care Committee ("TLC") approved his request, and it appears the

25  shoes were ordered in late June 2011.  Dkt. #87-1, ECF p. 8.  On

26  August 26, 2011, Romero asked for referral to a podiatrist due to

27  ongoing foot pain.  He still had not received his new shoes.  *Id.*

28

On December 21, 2011, Romero returned to see Dr. Becker, complaining of sharp pain from the neuroma.  The doctor noted Romero had "adequate shoes," with good width and length.  However, Romero still had sharp pain from the neuroma. Dr. Becker recommended surgery to excise the neuroma.  He indicated that until the surgery, Romero could try ice to control the pain, and he should use a cortisone cream on his foot for "pre-op."  *Id.*, ECF pp. 9, 10. Progress notes dated December 29, 2011, indicate the surgery was not approved by the TLC Committee, and Dr. Hansen was to discuss Romero's case with Dr. Becker.  *Id.*, ECF pp. 10, 11.

The next progress note is dated April 24, 2012 - nearly four months later - when Romero saw the prison doctor "to request new shoes due to feet pain."  *Id.*, ECF p. 13.  The treatment note indicates Romero "was refused new shoes and socks."  *Id.*  Romero had been "[i]ssued 1 pair metatarsal sleeve on 4/23/12."  *Id.*  On May 14, 2012, Romero asked when he would be able to see Dr. Becker again.  Notes indicate Romero was scheduled to see Dr. Becker in June 2012.  *Id.*; *see id.*, ECF p. 12.

Romero's visit with Dr. Becker apparently was moved up, because he saw the doctor on May 24, 2012.  Romero indicated he still had ongoing pain from the neuroma that had not been relieved by wider shoes.  Dr. Becker again recommended excision of the neuroma, as well as shoes with a "wide toe box."  *Id.*, ECF pp. 13, 14.  On May 31, 2012, notes indicate the TLC Committee's conferral regarding the neuroma surgery was deferred for about one month. *Id.*, ECF p. 14.  On June 15, 2012, Romero requested "a copy of the TLC committee meeting held on 6/14/2012 in regards to Dr. Becker physician orders."  *Id.*, ECF p. 19.  He received a response

indicating the TLC meeting was scheduled for June 28, 2012. *Id.* He made a similar request on June 28, 2012, and received a response that the TLC meeting had been rescheduled for July 12, 2012. *Id.*, ECF p. 20.

On July 10, 2012, Romero asked to be put "on call pass for 7-13-2012 to receive TLC Committee report for 7-12-2012." *Id.*, ECF p. 21. He received a response indicated the TLC had been rescheduled for July 26, 2012. *Id.* A similar request for July 27, 2012, indicated, "Your TLC appt is not until August 9th." *Id.*, ECF p. 22. On August 15, 2012, Romero noted the defendant Carrie Coffey had told him "Dr. Hansen was on vacation until September and TLC Committee would make a recommendation at that time." *Id.*, ECF p. 23. The response stated, "Yes TLC has been rescheduled." *Id.* On September 10, 2012, Romero was informed the TLC would meet on September 20, 2012. *Id.*, ECF p. 24. On September 21 and 24, 2012, Romero was informed the TLC meeting had been rescheduled for October 4, 2012. *Id.*, ECF pp. 25, 26.

On October 1, 2012, Romero was informed the TLC meeting had been rescheduled again, this time for October 18, 2012. *Id.*, ECF p. 27. He expressed his concern with the ongoing delay of his surgery. On October 11, 2012, Romero sent a note to Coffey stating: "I spoke with you twice now about TLC Committee continuing to re-scheduling [sic] meeting after meeting since May 2012 about foot surgery recommended by Dr. Becker, and exercise shoes. You told me you would speak with Dr. Shelton. The pain is continuing every day." *Id.*, ECF p. 29. Coffey responded the next day, stating: "I reviewed your chart and I apologize for delay. You are scheduled on Oct. 18th. I will also follow up to ensure the review occurred.

8 - ORDER ON PENDING MOTIONS

Again I am sorry for this delay." *Id.* On October 12, 2012, Medical Director Steven Shelton, M.D. wrote a letter to Romero in response to a grievance Romero apparently had filed. Dr. Shelton stated, *inter alia*, as follows:

> You have been scheduled for Therapeutic Level of Care (TLC) Committee for both of your concerns, left Morton's Neurectomy and the shoe order written by Dr. Becker on May 24, 2012. Ms. Coffey, Medical Services Manager[,] is tracking your review scheduled on October 18, 2012, and if for some reason the review is delayed, Ms. Coffey will contact me personally to resolve this situation.

> Both I and Ms. Coffey want to apologize in the delay of the TLC reviews regarding the left Morton's Neurectomy and the shoe order. The delay which occurred was not at the fault of Dr. Hansen, but a medical operations issue with how to present TLC referrals when the presenting provider is not available. Ms. Coffey and I will speak with our providers on how to ensure timely review.

Dkt. #77, ECF p. 3.

On October 18, 2012, Romero asked for the findings of the TLC Committee. He received a response indicating the TLC meeting had been rescheduled for November 1, 2012. Dkt. #87-1, ECF pp. 30, 31; *see id.*, ECF p. 15.

On October 24, 2012, Dr. Becker noted the following in Romero's chart: "I have not seen cortisone injections solve Morton's Neuroma[.]" *Id.*, ECF p. 15. The doctor indicated that short of surgery, the most they could do for Romero was give him shoes that would allow his foot to spread adequately to prevent trapping of the neuroma. "Shower sandals flip flops [are] ideal - might recommend he move to South Pacific isle and wear no shoes." *Id.* On October 31 and November 3, 2012, Romero requested a copy of the TLC Committee's findings. He was informed the TLC meeting now

9 - ORDER ON PENDING MOTIONS

1  was scheduled for November 15, 2012.  *Id.*, ECF p. 33, 34.  On
2  November 7, 2012, Romero saw Dr. Hansen for followup of various
3  problems, including his ongoing foot pain.  The doctor noted the
4  TLC would consider the surgery.  *Id.*

5     On November 15, 2012, the TLC Committee finally approved
6  Romero's surgery.  *Id.*, ECF p. 36.  The surgery was performed on
7  December 17, 2012, nearly one year after Dr. Becker first recom-
8  mended the surgery.  *Id.*, ECF pp. 37-38; *see id.*, ECF pp. 9, 10.

9
10                    ***V. DISCUSSION***

11                  ***A.  Precluded Claim***

12     Preliminarily, I note that the matter at issue in the present
13  case is limited to the defendants' actions in allegedly delaying
14  appropriate treatment for a Morton's Neuroma in Romero's left foot.
15  To the extent Romero attempts to renew his previous claim that the
16  defendants wrongfully delayed or withheld treatment for pain caused
17  by a Hallux Valgus of his left foot, the court finds such a claim
18  is barred by both collateral estoppel and *res judicata*.  Romero's
19  claim related to the Hallux Valgus condition was fully adjudicated
20  in *Romero v. Vargo*, No. 03:07-cv-06083-MO.  *See Romero v. Vargo*,
21  Case No. 03:10-cv-06066-JO, Dkt. #28 (Order dated May 15, 2012, so
22  holding).

23
24                  ***B.  Eighth Amendment Claim***

25     "A plaintiff must allege facts, not simply conclusions, that
26  show that an individual was personally involved in the deprivation
27  of his civil rights.  Liability under 1983 must be based on the
28  personal involvement of the defendant."  *Barren v. Harrington*, 152

10 - ORDER ON PENDING MOTIONS

1  F.3d 1193, 1194 (9th Cir. 1998) (citation omitted).  The defendants

2  argue that none of them was personally involved in any deprivation

3  of Romero's constitutional rights, and none of them acted with

4  deliberate indifference.  The defendants claim, therefore, that

5  Romero cannot establish his claim under 42 U.S.C. § 1983.  Dkt.

6  #74, ECF pp. 6-10.

7       Romero argues Drs. Vargo, Shelton, and Hansen all were members

8  of the TLC Committee that failed to act in a timely manner to

9  provide him with appropriate relief for his ongoing pain.  In

10  addition, he argues Dr. Hansen failed to confer with Dr. Becker, as

11  directed by the TLC Committee in December 2011.  As to the

12  defendant Coffey, Romero alleges that as the prison's Health

13  Manager, she failed to ensure the TLC Committee followed up on

14  Dr. Becker's recommendations for Romero's treatment in a timely

15  manner.

16       The defendant Carrie Coffey is Medical Services Manager at the

17  prison.  Dkt. #75, ¶ 1.  In her Declaration, Coffey describes the

18  purpose and duties of the TLC Committee as follows:

19              The Therapeutic Level of Care ("TLC")
            Committee typically meets every other week.
20          The TLC Committee establishes the methods and
            guidelines used to determine whether treatment
21          will or will not be provided by the Oregon
            Department of Corrections consistent with
22          applicable law and to ensure that sufficient
            health care resources are available to fulfill
23          the Department's policy of preserving and
            maintaining an inmate's health status during
24          incarceration.  Medical recommendations are
            required to be approved by the TLC Committee
25          in order to have a team of professionals
            analyze so only medically necessary issues are
26          treated.

27  *Id.*, ¶ 5; *see* Dkt. #77, Declaration of Steven Shelton, M.D., ¶ 3.

28

11 - ORDER ON PENDING MOTIONS

1    The defendants do not refute Romero's allegation that Drs.
2 Vargo, Shelton, and Hansen all were part of the TLC Committee.
3 Instead, the defendants argue Dr. Vargo was not Romero's treating
4 physician during the period in question; Dr. Shelton cannot be held
5 liable under a *respondeat superior* theory; and Dr. Hansen was not
6 "personally involved in the alleged deprivation of [Romero's] con-
7 stitutional rights." Dkt. #74, ECF pp. 7-8. Viewing the facts in
8 Romero's favor, as the non-moving party, Romero has established
9 sufficient facts to support a conclusion that all of the defendants
10 had sufficient "personal involvement" in Romero's care to expose
11 each of the defendants to potential liability if they were deli-
12 berately indifferent to Romero's serious medical need.

13    The chronology of events set forth above raises a genuine
14 issue of fact for trial as to whether the defendants were, in fact,
15 deliberately indifferent. Coffey states the TLC Committee
16 "typically meets every other week." In this case, the committee
17 initially denied Romero's request for surgery in December 2011,
18 recommending conservative treatment that included appropriate
19 footwear and a possible cortisone injection. Further, at the same
20 meeting, the TLC Committee directed Dr. Hansen - who was Romero's
21 treating physician at the prison - to consult with Dr. Becker
22 regarding the latter's recommendation for surgical excision of the
23 neuroma. Had the TLC Committee continued to meet "every other
24 week," per its customary policy, it would seem reasonable that the
25 conferral between Dr. Hansen and Dr. Becker would have taken place,
26 and Romero's surgery would have been discussed further, within at
27 least the next several weeks. On the contrary, the evidence
28 indicates the TLC's consideration of Dr. Becker's recommendation

1 was delayed repeatedly over the next *eleven months*.  On these

2 facts, the court cannot say that no reasonable jury could find in

3 Romero's favor on his deliberate indifference claim.

4     The defendants further argue that "'mere delay of surgery,

5 without more, is insufficient to state a claim of deliberate

6 medical indifference. . . .'  That delay must also be harmful."

7 Dkt. #74, ECF p. 9 (quoting *Shapley v. Nevada Bd. of State Prison*

8 *Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).  The United States

9 Supreme Court has indicated it is a "settled rule that the

10 unnecessary and wanton infliction of pain . . . constitutes cruel

11 and unusual punishment forbidden by the Eighth Amendment." *Hudson*

12 *v. McMillian*, 503 U.S. 1, 5, 112 S. Ct. 995, 998, 117 L. Ed. 2d 156

13 (1992) (internal quotation marks, citations omitted).  The *Hudson*

14 Court explained further:

15          What is necessary to establish an
    "unnecessary and wanton infliction of pain,"
16    . . . varies according to the nature of the
    alleged constitutional violation. [Citation
17    omitted.]  For example, the appropriate in-
    quiry when an inmate alleges that prison
18    officials failed to attend to serious medical
    needs is whether the officials exhibited
19    "deliberate indifference."  *See Estelle v.*
    *Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 291,
20    50 L. Ed. 2d 251 (1976).  This standard is
    appropriate because the State's responsibility
21    to provide inmates with medical care ordinari-
    ly does not conflict with competing adminis-
22    trative concerns.  [Citation omitted.]

23 *Hudson*, 503 U.S. at 5-6, 112 S. Ct. at 998; *see also Wood v.*

24 *Housewright*, 900. F.2d 1332, 1339-40 (9th Cir. 1990) (eighth

25 amendment violation does not require harm that threatens life or

26 health, but also applies "to 'less serious cases, [in which] denial

27 of medical care may result in pain and suffering which no one

28

13 - ORDER ON PENDING MOTIONS

1  suggests would serve any penological purpose.'") (quoting *Estelle*,
2  429 U.S. at 103, 97 S. Ct. at 290).

3      Here, Romero has alleged the defendants' failure to provide
4  him with timely, appropriate treatment caused him to suffer
5  unnecessary pain.  In other words, he has not merely alleged that
6  the defendants delayed unreasonably in providing him with appro-
7  priate treatment; he also has alleged the delay was harmful.

8      The court finds the record evidence establishes a genuine,
9  triable issue of material fact as to whether the defendants were
10  deliberately indifferent to Romero's serious medical need.
11  Accordingly, the defendants' motion for summary judgment is **denied**
12  as to Romero's Eighth Amendment claim.

13

14              *C.  State-Law Negligence Claim*

15      The defendants argue they are employees of the State of
16  Oregon, and as a result, pursuant to the Oregon Tort Claims Act,
17  the State of Oregon should be substituted as defendant for purposes
18  of Romero's negligence claim.  The defendants are correct.  *See* ORS
19  § 30.265(1); *Clarke v. Or. Health & Sciences Univ.*, 343 Or. 581,
20  610 (2007).

21      The defendants argue further that once the State of Oregon is
22  substituted as defendant, Romero's claim is barred by the Eleventh
23  Amendment, which "shields nonconsenting states from suits for
24  monetary damages brought by private individuals in federal court."
25  *N.E. Med. Servs., Inc. v. Calif. Dept. of Health Care Servs.*, 712
26  F.3d 461, 466 (9th Cir. 2013); *Howard v. Oregon Dept. of
27  Corrections*, slip op., 2013 WL 4786483, at *3 (D. Or. Sept. 5,

28

14 - ORDER ON PENDING MOTIONS

1   2013) (Aiken, CJ) (Eleventh Amendment bars federal court action

2   against a state, "regardless of the nature of the relief sought").

3       The defendants again are correct, and their motion for summary

4   judgment on Romero's negligence claim is **granted**.

5

6       **D.  *Alternative Claim Under Sections 1985 and 1986***

7       As an alternative to a section 1983 claim, Romero pleads his

8   deliberate indifference claim under 42 U.S.C. § 1985.  *See* Dkt. #2,

9   Complaint, at ECF p. 3.  He also attempts to plead a claim under 42

10  U.S.C. § 1986.  *Id.*  Neither of these sections provides a potential

11  remedy for Romero.

12      Section 1985(3) "was enacted [in 1871] by the Reconstruction

13  Congress to protect individuals - primarily blacks - from con-

14  spiracies to deprive them of their legally protected rights."

15  *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992).

16  The *Sever* court explained what a plaintiff must prove to prevail in

17  a claim under section 1985(3):

18              To bring a cause of action successfully
                under § 1985(3), a plaintiff must allege and
19              prove four elements:

20              (1) a conspiracy; (2) for the purpose of
                depriving, either directly or indirectly,
21              any person or class of persons of the
                equal protection of the laws, or of equal
22              privileges and immunities under the laws;
                and (3) an act in furtherance of this
23              conspiracy; (4) whereby a person is
                either injured in his person or property
24              or deprived of any right or privilege of
                a citizen of the United States.

25

26  *Id.* (quoting *United Brotherhood of Carpenters & Joiners v. Scott*,

27  463 U.S. 825, 828-29, 103 S. Ct. 3352, 3356-57, 77 L. Ed. 2d 1049

28  (1983); footnote omitted).  The court explained further that the

15 - ORDER ON PENDING MOTIONS

second of these four elements requires a plaintiff to show deprivation of a right "motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action.'" *Id.* (quoting *Griffith v. Breckenridge*, 403 U.S. 88, 102, 91 S. Ct. 1790, 1978, 29 L. Ed. 2d 338 (1971)).

Romero has failed to allege or prove any racial, or "otherwise class-based, invidiously discriminatory animus" behind the defendants' allegedly conspiratorial actions.  Nothing in this record raises a material question of fact for Romero on this issue. Because a claim under section 1986 "depends on the existence of a claim under § 1985," *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983), Romero also cannot prevail under section 1986.

The defendants' motion for summary judgment is **granted** as to Romero's claims under 42 U.S.C. §§ 1985 and 1986.

### E.   *Qualified Immunity*

The defendants argue they are entitled to qualified immunity as to each of Romero's claims.  "Qualified immunity protects government officers 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Maxwell v. County of San Diego*, 697 F.3d 941, 947 (9th Cir. 2012) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2738, 73 L. Ed. 2d 396 (1982)).  A constitutional right is "'clearly established'" if its contours are "'sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S. Ct. 2508, 2515, 153 L. Ed. 2d 666 (2002)).

However, "[q]ualified immunity 'gives government officials breathing room to make reasonable but mistaken judgments about open legal questions.'" *Lane v. Franks*, ___ U.S. ___, ___, 134 S. Ct. 2369, 2381, (2014) (quoting *Ashcroft v. al-Kidd*, 563 U.S. ___, ___, 131 S. Ct. 2074, 2085, 179 L. Ed. 2d 1149 (2011)); *see Plumhoff v. Rickard*, ___ U.S. ___, ___, 134 S. Ct. 2012, 2023 (2014) (same); *Wood v. Moss*, ___ U.S. ___, ___, 134 S. Ct. 2056, 2059 (2014) (same).

The only claim the defendants still face is the section 1983 claim for cruel and unusual punishment. The court declines to reach the question of qualified immunity on those claims dismissed on the merits or on the basis of the State's Eleventh Amendment immunity.

The court finds the law governing Romero's 1983 claim for deliberate indifference was clearly established, and its contours were sufficiently clear, for the defendants to have reasonably understood that their conduct could violate Romero's rights. Unlike the circumstances in *Lane, Plumhoff, and Wood*, where neither the Supreme Court, nor any Circuit Court of Appeals, had ruled on sufficiently identical facts, the law governing Eighth Amendment violations based on deliberate indifference to a serious medical need has been well established for nearly forty years, and is sufficiently clear that it places the constitutional issue beyond debate. *See Plumhoff*, 134 S. Ct. at 2023; *Jett*, 439 F.3d at 1096, and cases cited therein. Where failure to address the medical need allegedly produces unremitting pain, the law is clear. Further, it is not necessary for a prior case to have considered the precise medical condition. Taking the defense argument to the extreme

17 - ORDER ON PENDING MOTIONS

1  would require a prior case of a neuroma in the same foot at the

2  same location, with a plaintiff who has the same medical history of

3  foot problems. *Hope v. Pelzer* made clear this is not necessary for

4  a plaintiff to avoid a qualified immunity defense.

5       Thus, the defendants are not entitled to qualified immunity on

6  this record for the remaining claim, and the case will proceed to

7  trial on Romero's section 1983 Eighth Amendment claim.  According-

8  ly, the defendants' motion for summary judgment is **denied** as to

9  that claim.

10

11                 *F.  Personal vs. Official Liability*

12       The defendants argue Romero "cannot seek damages against

13  Defendants in their official capacities."  Dkt. #74, ECF p. 13.

14  The court agrees; to the extent Romero seeks damages against the

15  defendants in their official capacities, such a claim is barred by

16  the Eleventh Amendment, as discussed above.

17       However, Romero has also sued the defendants in their personal

18  capacities.  "On the merits, to establish *personal* liability in a

19  § 1983 action, it is enough to show that the official, acting under

20  color of state law, caused the deprivation of a federal right."

21  *Kentucky v. Graham*, 473 U.S. 159, 166, 105 S. Ct. 3099, 3105, 87

22  L. Ed. 2d 114 (1985); *see id.*, 473 U.S. at 165-67 & n.14, 105

23  S. Ct. at 3105-06 & n.14 (explaining the difference between per-

24  sonal-capacity and official-capacity actions") (citations omitted;

25  emphasis in original); *see Hafer v. Melo*, 502 U.S. 21, 27, 112

26  S. Ct. 358, 362-63, 116 L. Ed. 2d 301 (1991) (clarifying that

27  government officials who are sued in their personal capacities are

28  "persons" for purposes of section 1983; rejecting the view that

18 - ORDER ON PENDING MOTIONS

1  liability turns on whether the objected-to actions were taken in
2  the defendants' personal or official capacity).

3      If Romero prevails on his claim that the defendants were
4  deliberately indifferent to his serious medical need, then damages
5  will be an available remedy. *Id.*; *see id.*, 473 U.S. at 167-68, 105
6  S. Ct. at 3106 ("A victory in a personal-capacity action is a
7  victory against the individual defendant, rather than against the
8  entity that employs him."); *see also Blaylock v. Schwinden*, 862
9  F.2d 1352, 1354 (9th Cir. 1988) ("damage actions brought under 42
10 U.S.C. § 1983 are generally viewed as suits against the
11 individual").  The defendants' motion for summary judgment is
12 **denied** regarding Romero's ability to seek damages against the
13 defendants in their personal capacities.

14
15              *G.  Mental and Emotional Injuries*

16     The defendants argue Romero's alleged damages are "unclear,"
17 but in any event, he cannot recover for emotional distress without
18 first establishing physical injury or the commission of a sexual
19 act. Dkt. #74, ECF p. 15 (citing 42 U.S.C. § 1997e(e)).  The cited
20 section of the Prison Litigation Reform Act ("PLRA") bars claims
21 "for mental or emotional injury suffered while in custody without
22 a prior showing of physical injury."  42 U.S.C. § 1997e(e); *Oliver*
23 *v. Keller*, 289 F.3d 623, 629 (9th Cir. 2002).  "The requisite
24 physical injury must be more than *de minimis* for purposes of
25 § 1997e(e)[.]"  *Oliver*, 289 F.3d at 628.

26     Although Romero has not, in his *pro se* pleading, specifically
27 alleged a claim for mental or emotional injuries, he repeatedly
28 describes his "excruciating pain and discomfort" from the neuroma,

19 - ORDER ON PENDING MOTIONS

and he mentions "anxiety" caused by his pain. *See* Dkt. #2. Romero sought treatment for his foot pain, and inquired repeatedly over the succeeding eleven months to determine whether the TLC Committee had acted on Dr. Becker's recommendation for surgical excision of the neuroma. Romero continued, throughout this time, to complain of significant, ongoing pain in his foot. The court finds this continued pain is sufficient to meet the PLRA's "physical injury" standard. Therefore, to the extent Romero can prove mental or emotional injury, the court finds such a claim is not barred by section 1997e(e). The defendants' motion for summary judgment is **denied** as to Romero's ability to seek damages for mental or emotional injury.

### VI. CONCLUSION

For the reasons discussed above, the defendants' motion for summary judgment is **granted in part and denied in part.** The motion is **granted** as to Romero's state-law negligence claim, and his claim under 42 U.S.C. §§ 1985 and 1986. The motion is **denied** on all other grounds.

### VII. MOTION TO COMPEL

Romero has filed a motion to compel discovery, seeking a log of the dates Dr. Becker was present at the prison between December 29, 2011, and November 15, 2012. Dkt. #80. The defendants object on several grounds, among them that the requested log is not reasonably calculated to lead to the discovery of admissible evidence. The court disagrees with the defendants. Romero alleges Dr. Becker first recommended surgery to excise the

neuroma in December 2011.   That same month, the TLC Committee directed Dr. Hansen to confer with Dr. Becker regarding his recommendation that Romero have surgery.   A log of the dates Dr. Becker was present at the prison after December 29, 2011, could provide evidence that Dr. Hansen had ample opportunity to confer with Dr. Becker, but simply did not do so in a timely manner.   Such evidence is either relevant to, or is reasonably calculated to lead to admissible evidence of, deliberate indifference by Dr. Hansen and perhaps others.

Romero's motion to compel is **granted.**  By **August 11, 2014,** the defendants are directed to produce the requested log of Dr. Becker's visits to the prison.

### VIII.   MOTION FOR COUNSEL

On September 13, 2013, the court denied Romero's second request for appointment of *pro bono* counsel, without prejudice to renewal of that request should this case proceed to trial.   The court now *sua sponte* reconsiders the motion, and **grants** Romero's request for appointment of counsel, for purposes of representing Romero through the remainder of this case.

Once counsel has entered an appearance on Romero's behalf, the court will set a status and scheduling conference with the parties.

IT IS SO ORDERED.

Dated this <u>29th</u> day of July, 2014.


/s/ Dennis J. Hubel

_____
Dennis James Hubel
Unites States Magistrate Judge

21 - ORDER ON PENDING MOTIONS